# STATE OF MICHIGAN

# COURT OF APPEALS

In the Matter of GREENE, Minors.

UNPUBLISHED
October 14, 2014

Nos. 320507 & 320508
Wayne Circuit Court
Family Division
LC No. 11-499349-NA

Before: STEPHENS, P.J., and TALBOT and BECKERING, JJ.

PER CURIAM.

Respondents appeal as of right the trial court order terminating their parental rights to the minor children pursuant to MCL 712A.19b(3)(a)(*ii*) (desertion of the children for 91 or more days), (c)(*i*) (conditions that led to adjudication continue to exist), and (j) (reasonable likelihood that children will be harmed if returned to respondent). We affirm.

Respondent mother first argues on appeal that there was not clear and convincing evidence supporting termination of her parental rights. The trial court's findings that a ground for termination has been established and regarding the child's best interest are reviewed under the clearly erroneous standard. MCR 3.977(K); *In re Rood*, 483 Mich 73, 90-91 (Corrigan, J.); 126 n 1 (Young, J.); 763 NW2d 587 (2009). A finding is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake was made. *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010). To be clearly erroneous, a decision must be more than maybe or probably wrong. *In re Sours Minors*, 459 Mich 624, 633; 593 NW2d 520 (1999); *In re Williams*, 286 Mich App 253, 271; 779 NW2d 286 (2009). Further, regard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it. MCR 2.613(C); *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989); *In re Ellis*, 294 Mich App 30, 33; 817 NW2d 111 (2011).

A court may terminate a parent's parental rights to a child if one or more of the statutory grounds for termination listed in MCL 712A.19b(3) has been proven by clear and convincing evidence. *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). Only one statutory ground for termination need be established. *Id*. at 41.

-1-

In the present case, the trial court did not clearly err in terminating respondent mother's parental rights under MCL 712A.19b(3)(c)(*i*) and (j).[1] Those subsections provide that a court may terminate parental rights to a child if the court finds by clear and convincing evidence:

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:
>
> > (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.
>
> * * *
>
> (j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

Clear and convincing evidence supported termination of respondent mother's parental rights under MCL 712A.19b(3)(c)(*i*). The determination of what is a reasonable time under MCL 712A.19b(3)(c)(*i*) properly includes both how long it will take for the parent to improve conditions and how long the child can wait for the improvement. *In re Dahms*, 187 Mich App 644, 647-648; 468 NW2d 315 (1991).

The trial court entered the initial order of adjudication on March 30, 2011. The adjudication stemmed from respondent mother's admitted conduct of leaving the children in her car while she shopped inside a Meijer store. Respondent mother admitted that she had left her daughter unattended in her car days prior to the Meijer incident. She further admitted that there were prior substantiated cases involving similar conduct and that she previously took part in services aimed at rectifying the behavior. Respondent mother was provided services following the March 2011 incident, including parenting classes. The children were returned to her care. But the evidence demonstrated that she engaged in the same conduct thereafter. Witnesses testified that she left the children unattended in her car on multiple occasions, for lengthy

---

[1] The trial court's opinion and order included the statement that, "statutory grounds exist for termination of parental rights of both mother and father pursuant to MCL 712A.19b(3)(c)(*i*), (a)(*ii*), and (j)." The trial court failed to specify which of the subsections applied to which respondent. This Court concludes that the evidence did not support application of MCL 712A.19b(3)(a)(*ii*) to respondent mother and the evidence did not support application of MCL 712A.19b(3)(c)(*i*) to respondent father. Regardless, insofar as the trial court found those subsections applicable to both respondents, any error in that regard was harmless error. Erroneous termination of parental rights under one statutory basis for termination can be harmless error if the court also properly found another ground for termination. *In re Powers Minors*, 244 Mich App 111, 118; 624 NW2d 472 (2000). As discussed, *infra*, the trial court properly found termination of both respondents' parental rights under other grounds.

periods, while she was inside a plasma donation center. The children were again removed from respondent mother's care in June 2012. The trial court ordered her to take part in parenting classes and therapy among other services. The trial court ordered that the children return to respondent mother's care. But she again engaged in the same conduct, leaving the children unattended in April 2013. Respondent mother admitted that she left the then-five and eight-year-old children home alone for hours while she went to work and had done so on prior occasions following the children returning to her care. Respondent mother further admitted that she knew her work schedule weeks in advance and that the Department of Human Services (DHS) had provided daycare services. Yet she did not use those services or attempt to find other suitable childcare on occasions that she had to work.

The evidence demonstrated that, for over two years, respondent mother continued the behavior that led to the original adjudication. The children were removed from her care and she was provided services. Yet she continually demonstrated unwillingness to adequately supervise and protect her children. Under these circumstances, the trial court did not clearly err in finding clear and convincing evidence that respondent mother would not change her behavior and ensure proper supervision and protection of her children within a reasonable time.

The trial court also did not clearly err in finding clear and convincing evidence supporting termination of respondent mother's parental rights under MCL 712A.19b(3)(j). Respondent mother admittedly left the young children alone, exposing them to harm. She left them unsupervised in her car in public areas. She left them alone in her home for hours, instructing them to watch television and not answer the door. There was testimony that one of the children expressed fear that she and her brother would not have food, that the house would catch fire, and that someone would come inside and harm them. The child recalled instances where respondent mother left for lengthy periods, apparently overnight. Respondent mother testified at the termination hearing that she believed she had a better support system in place and could rely on family and others to assist her with child care. But respondent mother received services over a lengthy period and did not change her conduct even after the children were removed from her care. Based on respondent mother's history of continuing to leave the children alone and expose them to danger, the trial court did not clearly err in finding clear and convincing evidence of a reasonable likelihood of harm if the children were again returned to respondent mother.

Respondent mother next argues that DHS failed to provide her adequate services in order that she could rehabilitate herself. We disagree. Generally, when a child is removed from a parent's custody, the petitioner must make reasonable efforts through provision of services to rectify the conditions that caused the child's removal. *In re Fried*, 266 Mich App 535, 542; 702 NW2d 192 (2005), citing MCL 712A.18f(1), (2), and (4). Evidence demonstrates that respondent mother received services aimed at rectifying neglectful behavior – parenting classes and counseling – even prior to the present case. Respondent mother also admittedly participated in parenting classes and therapy following the March 2011 adjudication. In October 2012, the trial court ordered specialized parenting classes and therapy, as well as other in-home services. There was witness testimony that DHS provided daycare services to respondent mother, but she failed to consistently use them. There was also evidence that respondent mother missed or was late to visitations and missed therapy sessions. The record demonstrates that respondent mother was provided reasonable and adequate services. This Court finds no error.

Respondent mother also argues that the trial court committed clear error in finding that termination of her parental rights was in the children's best interests. This Court reviews the trial court's best interest findings for clear error. *In re Rood*, 483 Mich at 90-91.

In the event that a trial court finds one or more grounds for termination under MCL 712A.19b(3), the court shall order termination of a parent's parental rights if such termination is in the child's best interests. MCL 712A.19b(5). Whether termination of parental rights is in the best interests of a child must be proved by a preponderance of the evidence. *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). In determining whether termination is in the child's best interests, the court may consider the parent's history, psychological evaluation, parenting techniques during parenting time, family bonding, participation in the treatment program, the foster environment and possibility for adoption, and the parent's continued involvement in situations involving domestic violence. *In re Jones*, 286 Mich App 126, 131; 777 NW2d 728 (2009); *In re BZ*, 264 Mich App 286, 301; 690 NW2d 505 (2004); *In re AH*, 245 Mich App 77, 89; 627 NW2d 33 (2001). A court may also consider the child's need for permanency, stability, and finality. *Olive/Metts*, 297 Mich App at 42.

The trial court did not clearly err in finding that termination of respondent mother's parental rights was in the children's best interests. Respondent mother continued to engage in the same conduct that led to the initial adjudication. She admittedly left the young children unattended in her car and home. DHS provided her services aimed at rectifying that behavior, but she continually demonstrated an unwillingness to provide a stable, safe environment for the children, engaging in the same neglectful behavior over a period of years. Respondent mother missed some therapy sessions and visitations. There was witness testimony that respondent mother and the children did not appear to have a strong bond and that the children were adoptable. There was no evidence of a bond or relationship between the children and any extended family member. At the time of the termination hearing, the children were five and eight years old. They had been placed in foster care three times over the preceding two and one-half years. The children were in need of permanency, stability, and finality.

Respondent father argues that the trial court clearly erred in terminating his parental rights. We disagree.

MCL 712A.19b(a)(*ii*) provides that a court may terminate parental rights if it finds by clear and convincing evidence:

(a) The child has been deserted under either of the following circumstances:

* * *

(*ii*) The child's parent has deserted the child for 91 or more days and has not sought custody of the child during that period.

While respondent father eventually traveled to Michigan from his then home in Pennsylvania, appearing in this case in October 2013, the evidence demonstrates that he had deserted the children long before. Respondent father testified at the termination hearing that he had little contact with the children after 2008. Respondent mother testified that respondent father saw the minor son only a few times during the minor son's lifetime. Respondent father

-4-

admitted that he made no attempt to contact respondent mother or the children between 2008 and 2011. Respondent father spoke with the children only a few times by phone thereafter. Respondent father acknowledged that he knew the children were in foster care in 2011, yet he did not travel to Michigan from his place of residence in Pennsylvania at that point to offer assistance or to otherwise inquire with the trial court or agencies regarding their well being. Respondent father never attempted to arrange visitation with the children. Respondent father admitted that he avoided returning to Michigan earlier for fear of imprisonment for failing to pay child support. Under these circumstances, the trial court did not clearly err in basing its termination decision on subsection (a)(*ii*).

The trial court also did not clearly err in terminating respondent father parental rights under MCL 719A.19b(3)(j), which allows termination if it is shown by clear and convincing evidence that "There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent." Respondent father abandoned the children for years. He demonstrated no concern for their well being upon finding out that they had been placed in foster care in 2011. Respondent father admitted that concern for himself, specifically whether he would be imprisoned for failing to pay child support, caused him not to return to Michigan at an earlier point. Respondent father acknowledged that he could have done more to maintain contact with his children. Respondent father also testified that he planned to return to his job, fiancé, and other children in Pennsylvania. At the time of the termination hearing, respondent father was awaiting sentencing for an alcohol-related child endangerment charge, which involved him driving under the influence in 2008 with someone else's child in his car. The trial court, therefore, did not clearly err in finding that the children would likely suffer harm if placed in respondent father's care.

Respondent father also challenges the reasonable efforts of petitioner to reunite him with his children. "In general, petitioner must make reasonable efforts to rectify conditions, to reunify families, and to avoid termination of parental rights." *In re Mason*, 486 Mich at 152. This obligation however, is not one-way. Coexistent to petitioner's "responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of respondents to participate in the services that are offered." *In re Frey,* 297 Mich App 242, 248; 824 NW2d 569 (2012). Petitioner had many addresses for respondent father; some in Detroit, Ohio and in Pennsylvania. Many court hearings were adjourned in attempt to secure service to respondent father at multiple addresses. Despite petitioner's continued pursuit to find respondent father in an effort to engage him, respondent father could not be found. There was testimony that relatives of respondent father were aware of the court proceedings and that the paternal grandfather appeared in court on behalf of respondent father allegedly to report to respondent father. Yet, respondent father neither appeared nor made contact with DHS or the court. He waited until a termination petition was filed to appear in court. He made his decision not to participate in his children's lives prior to the termination based on considerations personal to himself. The petitioner, having tried to engage respondent father in his children's lives, moved forward to protect the interests of the vulnerable minors. We find respondent father's argument regarding lack of reasonable efforts unpersuasive.

The trial court also did not clearly err in finding that termination of respondent father's parental rights was in the children's best interests. Respondent father abandoned the children for years. The evidence suggested that he had no bond with them, having only sporadic phone

contacts during the period preceding the termination hearing. Respondent father demonstrated a concern for his well being over that of the children by avoiding an earlier return to Michigan. He admitted that he lacked financial means to care for the children. The children were adoptable and needed permanency, stability, and finality. The evidence suggested that respondent father could not offer stability or proper care. The preponderance of the evidence demonstrated that termination of respondent's father's parental rights was in the children's best interests.

Affirmed.

/s/ Cynthia Diane Stephens
/s/ Michael J. Talbot
/s/ Jane M. Beckering